# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF MARYLAND

| | | |
|---|---|---|
| BLUEBELL BUSINESS LIMITED, | * | |
| *Plaintiff*, | * | |
| v. | * | Civil Case No. RDB 17-2150 |
| MICHAEL JONES, | * | |
| *Defendant.* | * | |

\* \* \* \* \* \* \* \* \* \* \* \* \*

## MEMORANDUM OPINION

This case arises from a jet leasing contract between the Plaintiff Bluebell Business Limited ("Plaintiff" or "Bluebell") and Defendant Michael Jones. Bluebell is an Isle of Man company, and the leasing contract with Jones, a U.S. citizen, stipulates that the agreement shall be governed by English law. On January 25, 2017, Bluebell obtained a default judgment in its favor in the United Kingdom's High Court of Justice, Queen's Bench Division, Case No. HQ16X03208 (the "U.K. Action"). The foreign default judgement ("U.K. Judgment") was entered in favor of Bluebell in the amount of $430,371.56 plus interest. (ECF No. 1-2.) On July 31, 2017, Plaintiff filed a Complaint (ECF No. 1) in this Court seeking recognition and enforcement of the U.K. Judgment pursuant to the Maryland Uniform Foreign Money-Judgment Recognition Act, Md. Code Ann., Courts & Judicial Proceedings §§ 10-701 *et seq.*, and the Maryland Uniform Enforcement of Foreign Judgment Act, Md. Code Ann., Courts & Judicial Proceedings, §§ 11-801 *et seq.* On November 11, 2017, *pro se* Defendant Michael Jones filed an Answer generally denying the Plaintiff's claims, asserting a number of defenses

under the Maryland Uniform Foreign Money-Judgment Recognition Act, §§ 10-701 *et seq.*, and raising various counterclaims related to the lease agreement. (ECF No. 9.)[1]

Pending now are Plaintiff's Motion to Bifurcate Complaint from Counterclaim (ECF No. 14), Plaintiff's Motion to Amend/Correct Complaint (ECF No. 21), Defendant's Motion to Dismiss (ECF No. 25), and Defendant's two Motions for Joinder of Parties (ECF Nos. 31-32). The parties' submissions have been reviewed and no hearing is necessary. *See* Local Rule 105.6 (D. Md. 2016). For the reasons set forth below, Defendant's Motion to Dismiss (ECF No. 25) is DENIED; Plaintiff's Motion to Amend/Correct Complaint (ECF No. 21) is GRANTED; Plaintiff's Motion to Bifurcate Counterclaims (ECF No. 14) is GRANTED; and Plaintiff's own breach of contract claim (Count III in Plaintiff's Amended Complaint) will also be bifurcated. In addition, Defendant's Motions for Joinder of Parties (ECF Nos. 31-32) are DENIED WITH PREJUDICE IN PART and DENIED WITHOUT PREJUDICE IN PART. Specifically, the Motions for Joinder (ECF Nos. 31, 32) are DENIED WITH PREJUDICE as to Susan Kopacz, Johan Eliasch, and the N198GS Inc., Trust. The Motions for Joinder (ECF Nos. 31, 32) are DENIED WITHOUT PREJUDICE as to Justin Jenkins and Jet Evolutions, LLC. The Parties shall jointly submit a proposed briefing schedule, to address personal jurisdiction, on a renewed Motion for Joinder as to Justin Jenkins and Jet Evolutions, LCC. Finally, Plaintiff has 14 days to update its Corporate Disclosure Statement in accordance with this Memorandum Opinion.

---

[1] As discussed in more detail below, the *pro se* Defendant filed an Amended Answer on December 27, 2017. (ECF No. 20.)

**BACKGROUND**

On June 11, 2015, Bluebell and IBX Jets, LLC ("IBX") entered into a written agreement regarding a Gulfstream Aviation model G-IV aircraft ("the aircraft"), FAA Registration No. NI98GS, Airframe Serial No. 1098 (G-IV), pursuant to which Bluebell agreed to lease the aircraft to IBX. (Aircraft Lease Agreement, ECF No. 1-1 at 20-45.) Bluebell alleges that the Defendant Michael Jones was an owner of IBX and a guarantor of its obligations to the Plaintiff. (ECF No. 1 at ¶ 8; ECF No. 1-1 at 59.) The lease at issue in this case was to commence on July 1, 2015 and last for a period of 41 months. (*Id.* at 20.) According to the Plaintiff, the parties agreed to an amendment on September 18, 2015 whereby the lease's commencement and expiration dates would be extended. (U.K. Particulars of Claim, ECF No. 1-1 at 12.) Defendant contends that he did not voluntarily agree to this amendment. (ECF No. 9 at 3.) The aircraft was delivered to Jones on September 18, 2015, at which time he paid Plaintiff in the amount of two monthly installments. (ECF No. 1-1 at 7.)

According to the Plaintiff, Defendant failed to pay monthly invoices, late fees, supplemental invoices for additional usage, and an invoice for costs incurred during a four-day stay at Landmark Aviation IAD at Washington Dulles International Airport. (*Id.* at 14.) As a result, Bluebell retook possession of the aircraft in March 2016 under the default provision of the lease. (*Id.*)

On September 14, 2016, Plaintiff initiated an action in the United Kingdom's High Court of Justice, Queen's Bench Division seeking monetary damages of £333,587.64, or $430,371.56. (ECF No. 1 at 3; ECF No. 1-1 at 1.) Plaintiff alleges that on October 23, 2017

papers initiating the U.K. Action were served at 2808 Deerfield Court, Ellicott City, Maryland 21043 on Christopher Jones, Defendant's brother, who reportedly told the courier that Defendant Michael Jones also resided at the Ellicott City address. (ECF No. 1 at 3; Certificate of Service, ECF No. 1-1 at 60-62; Affidavit of Service, ECF No. 1-1 at 63-67.) On January 25, 2017, the U.K. court entered a default judgment against Defendant in the amount of $430,371.56, with interest at a rate of 5% above the U.S. Dollar 30-day Libor, which was 0.53% at the date of issuance of the judgment. (ECF No. 1 at 3.)

On July 31, 2017, Plaintiff filed a Complaint in this Court seeking recognition and enforcement of the foreign judgment pursuant to the Maryland Uniform Foreign Money-Judgment Recognition Act, Md. Code Ann., Courts and Judicial Proceedings §§ 10-701 *et seq.* ("Recognition Act"), and Maryland Uniform Enforcement of Foreign Judgement Act, Md. Code Ann., Courts and Judicial Proceedings, §§ 11-801 *et seq.*

On November, 15, 2017, Jones – as a *pro se* Defendant – filed an Answer to the Complaint. (ECF No. 9.) In his Answer, he generally denied the Plaintiff's claims, asserted a number of defenses under the Recognition Act, and raised various counterclaims related to the underlying transaction. (*Id.*) On November 29, 2017, Plaintiff filed a Motion to Bifurcate Plaintiff's Claim for Recognition of Foreign Judgment from Defendant's Counterclaims (ECF No. 14), and this motion has been fully briefed. (*See* ECF Nos. 18, 19.)

Defendant filed an Amended Answer (ECF No. 20) on December 27, 2017 pursuant to Rule 15(a)(1)(B) of the Federal Rules of Civil Procedure. This Amended Answer differs from the original Answer in numerous respects. First, the Amended Answer includes a "request for joinder" of (a) N198GS Inc., Trust, (b) Justin Jenkins individually, and (c) Jet

Evolutions, LLC. (*Id.* at ¶¶ 2-3.) Second, Mr. Jones "objects to the Plaintiff's Corporate Disclosure Statement (ECF No. 3) as it falsely presents the Plaintiff as a sole entity without a parent corporation or other relevant corporate affiliations" as required by Local Rule 103.3. (ECF No. 20 at ¶ 4.) Third, Defendant asserts additional defenses under the Recognition Act. (*See id.* at ¶¶ 11-45.) Fourth, while some of the purported "defenses" appear to overlap with his original counterclaims and while the Amended Answer requests "consideration of the Defendant's counterclaims," the Amended Answer does not itself contain a "Counterclaims" section. (*Id.* at 17.)[2]

On January 2, 2018, Plaintiff filed a Motion to Amend/Correct Complaint (ECF No. 21), which has been fully briefed. (*See* ECF Nos. 23, 24.) On March 19, 2018, Defendant filed a Motion to Dismiss (ECF No. 25), which has been fully briefed. (*See* ECF Nos. 27, 28.) On June 20, 2018, Defendant filed two Motions for Joinder of Parties. (ECF Nos. 31-32.) Plaintiff filed a consolidated response on July 3, 2018 (EFC No. 38), and Defendant replied on July 18, 2018. (ECF No. 39.)[3]

Pending now are Plaintiff's Motion to Bifurcate Counterclaims (ECF No. 14), Plaintiff's Motion to Amend/Correct Complaint (ECF No. 21), Defendant's Motion to Dismiss (ECF No. 25), and Defendant's Motions for Joinder of Parties (ECF Nos. 31-32).

---

[2] The *pro se* Defendant did not submit a red-line version of the Amended Answer identifying each individual amendment, so this overview of differences is not intended to be an exhaustive list, but rather an identification of the primary substantive differences.

## STANDARDS OF REVIEW

As a general matter, when a litigant proceeds *pro se*, their filings should be "liberally construed" and "held to less stringent standards than formal pleadings drafted by lawyers." *Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (citation omitted).

## I.   Motion to Dismiss

Under Rule 8(a)(2) of the Federal Rules of Civil Procedure, a complaint must contain a "short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). Rule 12(b)(6) authorizes the dismissal of a complaint if it "fail[s] to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). The purpose of Rule 12(b)(6) is "to test the sufficiency of a complaint and not to resolve contests surrounding the facts, the merits of a claim, or the applicability of defenses." *Presley v. City of Charlottesville*, 464 F.3d 480, 483 (4th Cir. 2006); *see also Goines v. Valley Cmty. Servs. Bd.*, 822 F.3d 159, 165-66 (4th Cir. 2016). Generally, to withstand a motion to dismiss, "a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678, 129 S.Ct. 1937, 1949 (2009) (internal quotations and citation omitted). In reviewing a motion to dismiss under Rule 12(b)(6), the Court may consider "documents incorporated into the complaint by reference, and matters of which a court may take judicial notice." *Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 322 (2007).

## II.   Motion to Amend Complaint

Under Rule 15 of the Federal Rules of Civil Procedure, a party may amend a pleading once as a matter of course within "21 days after service of a responsive pleading," if such a

response is required. Fed. R. Cvi. P. 15(a)(1). After this initial window has passed, "a party may amend its pleading only with the opposing party's written consent or the court's leave. The court should freely give leave when justice so requires." Fed. R. Civ. P. 15(a)(2). The court's discretion in this area should be guided "by the general policy embodied in the Federal Rules favoring resolution of cases on their merits," *Island Creek Coal Co. v. Lake Shore, Inc.*, 832 F.2d 274, 279 (4th Cir. 1987), and therefore "focus 'on prejudice or futility or bad faith,'" *id.* (quoting *Davis v. Piper Aircraft Corp.,* 615 F.2d 606, 613 (4th Cir. 1980)). Delay alone is an insufficient reason to deny leave to amend. *Edwards v. City of Goldsborough*, 178 F.3d 231, 242 (4th Cir. 1999) (citing *Johnson v. Oroweat Foods Co.,* 785 F.2d 503, 509 (4th Cir. 1986)).

## III.    Bifurcation

Under Rule 42(b) of the Federal Rules of Civil Procedure, a court may bifurcate one or more claims "[f]or convenience, to avoid prejudice, or to expedite and economize."  The moving party has the burden to convince the court that a claim should be bifurcated.  *Morgan v. Prince George's Co.*, 2010 WL 64405 at *2 (D. Md. 2010). Because district courts are optimally situated to determine the correct procedure for dealing with multiple claims, *see White v. Bloomberg*, 501 F.2d 1379, 1385 (4th Cir. 1974), courts have broad discretion when determining if a trial should be bifurcated. *Dixon v. CSX Transp., Inc.*, 990 F.2d 1440, 1443 (4th Cir. 1993), *cert. denied,* 510 U.S. 915 (1993).

While a district court's discretion to bifurcate claims is broad, there are limits to its scope. *See, e.g.*, *Dixon*, 990 F.2d at 1443 (finding an abuse of discretion when district court denied bifurcation and permitted testimony regarding one claim that was irrelevant and

highly prejudicial to another claim). Additionally, while convenience and economy should be considered, the overriding consideration is a fair trial for both parties. *Arnold v. Eastern Air Lines, Inc.*, 712 F.2d 899, 906 (4th Cir. 1982) (*en banc*), *cert. denied*, 464 U.S. 1040 (1984).

## IV.   Joinder

Rule 19 of the Federal Rules of Civil Procedure governs when a party *must* be joined, while Rule 20 of the Feral Rules of Civil Procedure governs when a party *may* be joined. Under Rule 19(a)(1), "[a] person who is subject to service of process and whose joinder will not deprive the court of subject-matter jurisdiction must be joined" if:

> (A) in that person's absence, the court cannot accord complete relief among existing parties; or
> (B) that person claims an interest relating to the subject of the action and is so situated that disposing of the action in the person's absence may:
> > (i) as a practical matter impair or impede the person's ability to protect the interest; or
> > (ii) leave an existing party subject to a substantial risk of incurring double, multiple, or otherwise inconsistent obligations because of the interest.

Fed. R. Civ. P. 19.  If a required party cannot be joined, Rule 19(b) authorizes the court to dismiss an action if the court determines that "in equity and good conscience" the case cannot proceed without prejudicing the absent party or the plaintiff. *Id.*

Rule 20(a)(2) allows a person to be joined as a [counter-]defendant if "any right to relief is asserted against them jointly, severally, or in the alternative with respect to or arising out of the same transaction, occurrence, or series of transactions or occurrences" and "any question of law or fact common to all defendants will arise in the action."  Fed. R. Civ. P. 20(a)(2). "Neither a plaintiff nor a defendant need be interested in obtaining or defending

against all the relief demanded" because a district court may tailor any judgment to each party's rights and liabilities. Fed R. Civ. P. 20(a)(3).

Under Rule 13(h), "Rules 19 and 20 govern the addition of a person as a party to a counterclaim or crossclaim." Fed. R. Civ. P. 13.

## DISCUSSION

### I.    Motion to Dismiss

To recognize a foreign judgment under Maryland's Recognition Act, Plaintiff must establish that a foreign judgment is "final, conclusive, and enforceable where rendered." Md. Code Ann., Cts. & Jud. Proc. §§ 10-702, 10-703. A foreign judgment is "conclusive between the parties to the extent that it grants or denies recovery of a sum of money."

A foreign judgment is not "conclusive" if, *inter alia*, "[t]he foreign court did not have personal jurisdiction over the defendant" or "[t]he judgment was obtained by fraud." *Id.* § 10-704.    The Recognition Act goes on to provide that the "personal jurisdiction" requirement is satisfied where "[t]he defendant prior to the commencement of the proceedings had agreed to submit to the jurisdiction of the foreign court with respect to the subject matter involved." *Id.* § 10-705(a)(3). The term "fraud" in the Recognition Act is limited to "extrinsic fraud" that "'goes to the question of jurisdiction' or involves circumstances preventing 'the defeated party from fully and fairly presenting his case.'" *Iraq Middle Market Development Foundation v. Harmoosh*, 175 F. Supp. 3d 567, 577 (D. Md. 2016) (quoting *Mueller v. Payn*, 30 Md. App. 377, 352 A.2d 895, 902 (Md. Ct. Spec. App. 1976)), *vacated and remanded on other grounds*, 848 F.3d 235 (4th Cir. 2017).  For example, "prevent[ing] the defendant from being informed of the suit" would constitute extrinsic fraud. *Id.*

Maryland law also provides discretionary bases for nonrecognition, including *inter alia*, "[t]he defendant in the proceedings in the foreign court did not receive notice of the proceedings in sufficient time to enable him to defend; . . . the cause of action on which the judgment is based is repugnant to the public policy of the State; . . . or [i]n the case of jurisdiction based only on personal service, the foreign court was a seriously inconvenient forum for the trial of the action." *Id.* § 10-704. Provided that none of the grounds for nonrecognition have been established, a default judgment in a foreign country may be recognized and enforced in Maryland. *Syncrude Canada Ltd. v. Highland Consulting Grp., Inc.*, 916 F. Supp. 2d 620, 628 (D. Md. 2013).

The Recognition Act is silent as to the allocation of burdens of proof, and Maryland Courts have not directly addressed the issue. Some states require the party seeking to enforce the foreign judgment to establish only that "the judgment is final, conclusive, and enforceable where rendered." *See e.g.*, *Clientron Corp. v. Devon IT, Inc.*, 125 F. Supp. 3d 521, 527 (E.D. Pa. 2015) (applying Pennsylvania's recognition statute); *Osorio v. Dole Food Co.*, 665 F. Supp. 2d 1307, 1324 (S.D. Fla. 2009), *aff'd*, 635 F.3d 1277 (11th Cir. 2011); *The Courage Co. LLC v. The ChemShare Corp.*, 93 S.W.3d 323, 331 (Tex. App. 2002) (party seeking to avoid recognition has burden to prove ground for nonrecognition). Other states require the moving party to also make prima facie showings of subject matter jurisdiction, personal jurisdiction, and impartial foreign tribunals with procedures compatible with due process. *See, e.g., Bridgeway Corp. v. Citibank*, 45 F. Supp. 2d 276, 285 (S.D.N.Y. 1999).[4] In those states, once the moving party makes a prima facie case for recognition, the opposing party bears

---

[4] *See generally* Gregory H. Shill, *Ending Judgment Arbitrage: Jurisdictional Competition and the Enforcement of Foreign Money Judgments in the United States*, 54 Harv. Int'l L.J. 459, 496–97 (2013).

the burden to establish defenses such as fraud, public policy, and other discretionary bases for nonrecognition. *Id.*

While Maryland Courts have not directly addressed the question with respect to the Recognition Act, the Court of Appeals of Maryland has held that, under the Maryland Uniform Enforcement of Foreign Judgment Act, Md. Code Ann., Courts & Judicial Proceedings, §§ 11-801 *et seq.*, the burden to establish the personal jurisdiction defense rests with the party opposing enforcement of the foreign judgment. *Legum v. Brown*, 395 Md. 135, 146–47, 909 A.2d 672, 679 (2006) ("Nor is there any reason, if there is to be a contest as to the personal jurisdiction of the foreign court, whether because the defendant . . . even if subject to suit there, was not properly served, not to place the burden on the defendant to raise that defense.") This Court sees no reason why Maryland courts would not apply the same rule to the Recognition Act, but even if Maryland requires a plaintiff to make out a prima facie showing of personal jurisdiction, the Complaint in this case is sufficient. (*See infra.*)

In his Motion to Dismiss (ECF No. 25), the *pro se* Defendant advances two forms of arguments, labeled "issues," for dismissing the Complaint. First, he argues that the UK Judgment does not comply with various provisions of the Recognition Act, primarily centered on personal jurisdiction. Second, he contends that Plaintiff committed fraud during the underlying transaction and in litigating this case. At this stage, Defendant's arguments are insufficient to warrant dismissal of the Complaint.

### A. Personal Jurisdiction under the Recognition Act

Under the Recognition Act, Defendant alleges the Complaint fails based on (a) lack of personal jurisdiction by the UK court, (b) fraudulent presentation of service to the UK court, (c) serious inconvenience, and (d) insufficient time to defend. (*Id.* at 5 (citing §§ 10-704(a)(2), 10-704(a)(4), and 10-704(b)(5)); ECF No. 28 at 1.) Regarding personal jurisdiction, Section 32.2 of the Guarantee and Indemnity Agreement, which was referenced in the Complaint and attached thereto, explicitly states:

> The Guarantor irrevocably agrees for the benefit of the Lessor that *the courts of England shall have nonexclusive jurisdiction* to hear and determine any suit, action or proceeding and to settle any disputes, which may arise out of or in connection with this Guarantee and, for such purposes, irrevocably submits to the jurisdiction of such courts.

(ECF No. 1-1 at 56) (emphasis added). Defendant Michael Jones signed this document as the "Guarantor." (*Id.* at 58.) The Complaint has therefore made out a plausible claim that "[t]he defendant prior to the commencement of the proceedings had agreed to submit to the jurisdiction of the foreign court with respect to the subject matter involved," which precludes nonrecogntion for lack of personal jurisdiction. *Id.* § 10-705(a)(3).

Notwithstanding the explicit language of § 1-705(a)(3) as to personal jurisdiction writ large, Defendant contends that "service of process may not be ignored." (ECF No. 28 at 6 (citing *Syncrude Canada Ltd. v. Highland Consulting Grp., Inc.*, 916 F. Supp. 2d 620, 627 (D. Md. 2013)).)[5] In fact, Defendant asserts that Plaintiff "fraudulently presented service" to the UK Court by "misrepresent[ing] to the UK court that correct service of process had occurred."

---

[5] Indeed, Defendant argues that Plaintiff's application of § 10-705(a)(3), which does not by it terms require service of process for personal jurisdiction, would be unconstitutional. (ECF No. 28 at 6.) This Court, however, will not ignore proper service of process as a requirement for due process, *Syncrude*, 916 F. Supp. 2d at 627, so the Court need not address Defendant's passing challenge to the constitutionality of § 10-705(a)(3).

(ECF No. 25-1 at 16.) This argument appears to involve both a factual dispute as to how process was served and a legal argument as to whether the purported service was sufficient.

As to the factual allegations of service, the Complaint alleges that "Plaintiff served a copy of papers initiating the UK Action on Defendant on October 23, 2017, at 2808 Deerfield Court, Ellicott City, Maryland 21043, by substituted service on his brother, Christopher Jones, who indicated that both he and his brother resided there." (ECF No. 1 at ¶ 9.) The Complaint attaches a copy of the Affidavit of Service (ECF No. 1-1 at 63-67) and a copy of the Certificate of Service (*id.* at 60-62), which reflect that Christopher Jones told the process server that he and Michael Jones reside at the 2808 Deerfield Court address. The Affidavit and Certificate both state that process was served "at Michael Jones' dwelling or usual place of abode with a resident of suitable age and discretion," thereby perfecting service pursuant to Maryland Rule 2-121(a)(2). (ECF No. 1-1 at 61, 67.)

Defendant invites this Court to reject the Affidavit and Certificate as containing false assertions as to Michael Jones' dwelling and Christopher Jones' comments thereupon. Defendant even attaches two affidavits to contradict the Plaintiff's version of events, but this Court declines to convert Defendant's Motion to Dismiss into one for summary judgment by considering those documents. When ruling on a motion to dismiss, this Court must accept all well-pled factual allegations as true. *Iqbal*, 556 U.S. at 678. This Court therefore accepts as true the Plaintiff's factual allegations as to service of process on Defendant by way of his brother Christopher Jones. The Defendant may challenge the process server's account through discovery and subsequent litigation, but this Court cannot resolve factual disputes at the motion to dismiss stage.

As to the legal sufficiency of the service of process, Defendant argues that Plaintiff's service in the U.K. Action did not comply with "Federal Rules of Civil Procedure, Rule 4; Maryland Rules 3-121(a), and Rule 2-121; the UK Rules of Civil Procedure, Part 6; or The Hague Convention on the Service Abroad of Judicial and Extra-Judicial Documents in Civil or Commercial Matters." (ECF No. 25-1 at 5.) The lease and guaranty agreements at issue both state the agreements are "governed by, and shall be construed in accordance with, English law." (ECF No. 1-1 at 36, § 45.1; ECF No. 1-1 at 56, § 32.1.) This Court therefore first looks to the UK Rules governing service of process. *See Syncrude Canada Ltd. v. Highland Consulting Grp., Inc.,* 916 F. Supp. 2d 620, 626-627 (D. Md. 2013).

Under Part 6.40 of U.K. Rules of Civil Procedure, process may be served "by any other method permitted by the law of the country in which it is to be served." Civil Procedure Rule 6.40(3)(c) (U.K.).[6] Under Rule 4 of the Federal Rules of Civil Procedure, process may be served by "leaving a copy of each at the individual's dwelling or usual place of abode with someone of suitable age and discretion who resides there." Fed. R. Civ. P. 4 (e)(2)(B). Similarly, under Maryland Rule 2-121(a)(2), process may be served at "the individual's dwelling house or usual place of abode with a resident of suitable age and discretion." Md. Rules § 2-121.[7] Article 10(c) of the Hague Convention enables "any person interested in a judicial proceeding to effect service of judicial documents directly through the judicial officers, officials or other competent persons of the State of destination." Hague Convention on the Service Abroad of Judicial and Extrajudicial

---

[6] *Available at* https://www.justice.gov.uk/courts/procedure-rules/civil/rules/part06#6.40.
[7] Maryland Rule 2-121(a)(2) applies to proceedings in the Circuit Court, the court of general jurisdiction in Maryland. Maryland Rule 1-321(a) provides essentially the same mechanism for cases in the District Court.

Documents in Civil or Commercial Matters ("Hague Service Convention") T.I.A.S. No. 6638, 20 U.S.T. 361 (1965) (entered into force Feb. 10, 1969).

In this case, Plaintiff did not merely restate the legal requirement of service at an individual's "dwelling or usual place of abode." Fed. R. Civ. P. 4 (e)(2)(B); Md. Rules § 2-121. The Complaint, the Affidavit of Service, and the Certificate of Service all reflect the factual basis for Plaintiff's assertion – namely that Christopher Jones told the process server that Michael Jones also resided at the 2808 Deerfield Court address. (ECF Nos. 1, 1-1.) Personal service by the Plaintiff in accordance with U.S. and Maryland law also complies with Article 10(c) of the Hague Convention. Plaintiff has therefore made out a plausible claim that the service of process complied with all applicable procedural rules.

Even if Maryland requires a moving party to affirmatively establish a prima facie case of personal jurisdiction at the motion to dismiss stage, the Plaintiff has made out a plausible claim that the UK Court had personal jurisdiction under § 10-705(a)(3) of the Maryland Recognition Act and by way of compliant service of process.

This Court now turns to Defendant's argument that the Complaint should be dismissed because the Defendant had insufficient time to defend and because the UK Court was a "seriously inconvenient forum." Md. Code Ann., Cts. & Jud. Proc. §§ 10-704(b)(1) and (b)(5). Even in jurisdictions where a moving party bears additional burdens, the burden to prove *discretionary* grounds for nonrecognition rests with the party opposing recognition. *See* Gregory H. Shill, *Ending Judgment Arbitrage: Jurisdictional Competition and the Enforcement of Foreign Money Judgments in the United States*, 54 Harv. Int'l L.J. 459, 496–97 (2013) (collecting cases). In this case, both the time to defend and convenience of the forum are *discretionary* grounds for

nonrecognition under § 10-704(b). As such, Plaintiff's Complaint need not affirmatively establish that Plaintiff had sufficient time to defend or that the UK was a seriously inconvenient forum. These arguments may be reasserted following discovery, but they provide no basis to dismiss the Complaint.

### B. Fraud Allegations

As to the Defendant's fraud-based contentions in support of his Motion to Dismiss, Defendant claims that the Plaintiff:

(a) "fraudulently induced the Defendant to provide personal guaranty of the aircraft lease" (ECF No. 25-1 at 8);

(b) "fraudulently induced execution of the aircraft lease by misrepresenting ownership and airworthy condition of the aircraft" (*id.*);

(c) participated in "fraudulent representations for FAA registration" of the aircraft (*id.* at 12);

(d) "falsely presents the Plaintiff as a sole entity without a parent corporation or other relevant corporate affiliations" as required by Local Rule [103.]3 (*id.* at 14);

(e) "misrepresented to the UK court that correct service of process on the Defendant had occurred" (*id.* at 16);

(f) "fraudulently presented duplicate damages to the UK court already attributed to another party" in a similar suit in Canada (*id.*);

(g) fraudulently presents claim for "monies already paid" as reflected in Defendant's proffered "financial examination" report (*id.* at 17); and

(h) fraudulently presented damages related to the aircraft's stay at Dulles International Airport because "Defendant no longer had possession of the G-IV at the time alleged" (*id.*).

He further asserts, "it would be against public policy to enforce a contract . . . obtained by fraudulent means." (*Id.* at 8 (citing *Wedeman v. City Chevrolet Co.*, 278 Md. 524, 529, 366 A. 2d 7 (1976)).)

As Judge George L. Russell of this Court has found, the term "fraud" in the Recognition Act is limited to "extrinsic fraud" that "'goes to the question of jurisdiction' or involves circumstances preventing 'the defeated party from fully and fairly presenting his

case.'" *Iraq Middle Market Development Foundation,* 175 F. Supp. 3d at 577 (quoting *Mueller v. Payn*, 30 Md. App. 377, 352 A.2d at 902). Of the fraud claims listed above, only the Defendant's allegation that the Plaintiff "misrepresented to the UK court that correct service of process on the Defendant had occurred" (ECF No. 25-1 at 16) would qualify as "extrinsic fraud" relevant under the Recognition Act. More specifically, Defendant's allegation of fraudulent service of process could in theory enable a party to institute an action and thereafter "prevent the defendant from being informed of the suit." *Id.* While relevant to the ultimate success of Plaintiff's claim, this alleged fraud on the UK court is not a matter the Plaintiff must disprove through his initial pleading. *See Legum*, 395 Md. at 146–47, 909 A.2d at 679; *Bridgeway Corp.*, 45 F. Supp. 2d at 285. Simply raising the issue of fraud is not sufficient at this stage to dismiss the Complaint.

The Defendant's remaining allegations of fraud go to the *merits* of Plaintiff's contract claim in the U.K. Action, not the UK Court's *jurisdiction* over the action or the Defendant.[8] As such, these allegations have no bearing on the question of "fraud" under the Recognition Act. Furthermore, Defendant asks this Court to consider facts and documents outside the Complaint, which this Court may not do when ruling on a motion to dismiss. Fed. R. Civ. P. 12(d); *Tellabs*, 551 U.S. at 322; *Trimble Navigation*, 484 F.3d at 705.

As to Defendant's assertion that the alleged fraudulent conduct would render the UK Judgment "repugnant to the public policy of the State" under § 10-704(b)(2), Defendant once again attempts to saddle the Plaintiff with the burden to disprove the existence of a discretionary ground for nonrecognition. This Court sees no basis in law for imposing such a

---

[8] The Defendant's claim that all of the alleged acts of fraud "do not arise out of the contractual relationship established by the Sublease" defies common sense. (ECF No. 25-1 at 8.)

requirement on a plaintiff at the motion to dismiss stage. Defendant also appears to have misconstrued § 10-704(b)(2), which states that "the cause of action on which the judgment is based," not the entirety of the circumstances, must violate public policy. In this case, Plaintiff asserted a breach of contract claim – a cause of action hardly repugnant to U.S. or Maryland public policy.

At bottom, Defendant's Motion is based on the faulty belief that Plaintiff's factual allegations "are not deserving of an unqualified presumption of veracity." (ECF No. 28 at 2.) As the Plaintiff acknowledges elsewhere, however, this Court "must accept as true all of the factual allegations contained in the complaint." (*Id.* (quoting *Erickson*, 551 U.S. at 94).) Accordingly, Defendant's Motion to Dismiss (ECF No. 25) is DENIED.

## II.  Motion to Amend Complaint

Having determined that Plaintiff's Complaint for recognition and enforcement of the U.K. Judgment states a plausible claim under Rule 12(b)(6), this Court now turns to Plaintiff's Motion for Leave to File First Amended Complaint (ECF No. 21), which was filed almost two months after Defendant filed his initial Answer (ECF No. 17). This Court "should freely give leave [to amend] when justice so requires," Fed. R. Civ. P. 15(a)(2), and the Federal Rules embody a policy "favoring resolution of cases on their merits," *Island Creek Coal Co. v. Lake Shore, Inc.*, 832 F.2d 274, 279 (4th Cir. 1987).

Plaintiff in this case seeks to amend its Complaint to add a claim, in the alternative, for breach of contract. Defendant opposes the amendment claiming that it (a) is untimely under Rule 15(a)(1), (b) was submitted in bad faith, (c) will result in prejudice, (d) is futile, and (e) is precluded by *res judicata*. As addressed above, the motion is not time-barred; rather,

it has been filed under Rule 15(a)(2), which does not provide a specific deadline. Fed. R. Civ. P. 15(a)(2). Additionally, the motion was filed on January 2, 2018 in compliance with the operative Scheduling Order (ECF No. 10). Furthermore, delay alone is an insufficient reason to deny leave to amend. *Edwards*, 178 F.3d at 242 (4th Cir. 1999) (citing *Johnson v. Oroweat Foods Co.,* 785 F.2d 503, 509 (4th Cir. 1986)).

Regarding bad faith, Defendant points to an allegedly deficient Corporate Disclosure Statement, which states, "The Plaintiff has no parent corporation, nor is there any publicly held corporation that own[s] 10% or more of the stock in the Plaintiff." (ECF No. 3.) Defendant claims that Plaintiff did not disclose its affiliation with Santiago Business Co. International Ltd. ("Santiago International"); N198GS, Inc.; or Firefly Financial Limited ("Firefly") (ECF No. 20 at ¶¶ 4-6), but he has failed to show how these alleged nondisclosures render the specific proposed amendment one of "bad faith." To the extent Defendant's bad faith argument is more of an effort to ensure that the "parties having a real interest in the outcome of the case" are joined in this action (ECF No. 23 at 3), this Court will address that concern in the context of Defendant's Motions for Joinder (ECF Nos. 31, 32). There is no evidence that Plaintiff's alternative claim for breach of contract reflects any bad faith on the part of the Plaintiff.

Defendant claims that he will be prejudiced if Plaintiff is allowed to "relitigate the claims here just because the forum originally selected by the Plaintiff has proved to be unwise in retrospect." (ECF No. 23 at 3.) The Defendant also claims he "would be prejudiced by the uncertain prospect of litigation, disruption to emotional peace, and the ordering of future affairs." (*Id.* at 4.) Defendant's prejudice argument might have merit if

Defendant were the one to have obtained a favorable judgment in the U.K. Having admittedly not litigated the U.K. Action, Defendant would not be "relitigating" any claims. What's more, Defendant's own counterclaims allege, in part, breaches of the lease Plaintiff now seeks to enforce with the proposed amendment. (*See* ECF No. 9 at 7.) Defendant therefore actively seeks to engage the "uncertain prospect of litigation" if the U.K. Judgment is not recognized. Defendant's claim of prejudice therefore lacks credibility and merit.

Defendant's futility argument appears to focus on the fact that his *own* attempt to defeat recognition of the U.K. Judgment "will be a futile exercise if it only serves to create the expense of litigating the underlying claims." (ECF No. 23 at 3.) Futility in the context of amending complaints, however, refers to a proposed amendment's inability to cure defects in the original Complaint. As this Court has already found, the original Complaint is viable on its own, and Plaintiff may plead in the alternative. Fed. R. Civ. P. 8(d).

Finally, Defendant invokes *res judicata* to preclude the proposed breach of contract claim as having been "previously and finally adjudicated" in the U.K. Action. (ECF No. 23 at 4.) This argument is curious given his insistence to the contrary: that the UK judgment is void for lack of personal jurisdiction and defective service of process. Defendant fails to grasp that by pleading *in the alternative*, Plaintiff's breach of contract will only become viable in the event that the U.K. Judgment is *not* recognized by this Court. As such, the proposed amendment does not implicate *res judicata*. All of Defendant's arguments in opposition to Plaintiff's Amended Complaint are therefore meritless. Mindful that leave to amend should be freely given, this Court will GRANT Plaintiff's Motion for Leave to File First Amended Complaint (ECF No. 21).

### III. Bifurcation

Having determined the full range of claims to be advanced by both parties, this Court now turns to Plaintiff's Motion to Bifurcate Complaint from Counterclaim (ECF No. 14). At the time of filing this motion, Plaintiff's Complaint contained only its claims for recognition and enforcement of the U.K. Judgment. (ECF No. 1.) Defendant's contentions in the "Counterclaims" section of his initial Answer essentially assert two types of claims against the Defendant[9]: (1) that Plaintiff made fraudulent misrepresentations regarding the ownership and airworthiness of the aircraft, and (2) that the Plaintiff breached the lease agreement by delivering the aircraft in an "unairworthy" condition. (ECF No. 9.)[10]

In its motion, Plaintiff argues that bifurcating the counterclaims related to the underlying contract dispute will serve judicial economy because resolving the status of the UK Judgment will – by operation of *res judicata* – "obviate any need to re-litigate Bluebell's underlying claim." (ECF No. 14 at 2.) Plaintiff also notes that discovery related to the recognition and enforcement of the U.K. Judgment will "involve relatively modest discovery regarding discrete procedural matters" such as notice and service. Litigating the counterclaims regarding the underlying contractual dispute, however, would involve significant technical and non-technical discovery, including third-party discovery. (*Id.*)

Defendant argues that bifurcation would duplicate discovery, delay disposition of Defendant's claims, and undermine judicial economy. Defendant's theory is based on his

---

[9] The Answer also mentions that "monies already paid may have been stolen" (ECF No. 9 at ¶24), but this accusation appears to be aimed at Jet Evolution, not Bluebell. The Court will address this contention in the context of Defendant's Motions for Joinder.

[10] Defendant has also claimed that the Plaintiff's breach of contract claims are "fraudulent as no loss of income occurred," but this Court construes this statement as a denial rather than an independent cause of action. While the Defendant's Amended Answer does not itself contain a "counterclaims" section, it largely reiterates the same allegations under the "Defenses Against Recognition" section. (ECF No. 20.) The Plaintiff has continued to recognize the original counterclaims as viable, and due to Defendant's *pro se* status, this Court agrees that such an approach is warranted.

view that his counterclaims are relevant to the "fraud defense against judgment recognition" and thereby tie into the "repugnant to public policy" ground for nonrecognition under the Maryland Recognition Act § 10-704(b)(2).

While the claims relate to the same aircraft lease agreement, discovery and any trials would focus on different factual and legal issues. As Plaintiff notes, litigation of Plaintiff's foreign judgment claim will focus on procedural issues, such as service of process and personal jurisdiction, while litigation of the Defendant's counterclaims will focus on the entire business relationship between Plaintiff and Defendant. As this Court explained above, the "fraud" under § 10-704(a)(4) only covers "extrinsic fraud" that "'goes to the question of jurisdiction' or involves circumstances preventing 'the defeated party from fully and fairly presenting his case.'" *Iraq Middle Market Development Foundation,* 175 F.Supp.3d at 577 (quoting *Mueller v. Payn*, 30 Md. App. 377, 352 A.2d at 902). Notwithstanding Defendant's other allegations of fraudulent misrepresentations to the U.K. Court (*see* Def.'s Brief Mot. Dismiss, ECF No. 25-1), the counterclaims themselves only seek to litigate the underlying transaction. The counterclaims therefore do not allege a form of extrinsic fraud relevant under § 10-704(a)(4). Additionally, the discretionary public policy defense under § 10-704(b)(2) focuses on the foreign cause of action itself, not the totality of the circumstances. Md. Code Ann., Cts. & Jud. Proc. § 10-704(b)(2). The domestic enforceability of the U.K. Judgment in no way depends on the validity of Defendant's counterclaims. Discovery therefore need not be duplicated, and this Court sees no reason why any trial on the U.K. Judgment alone would prejudice either party.

Unlike Plaintiff's foreign judgment claim, the viability of Defendant's counterclaims may very well depend on the resolution of Plaintiff's foreign judgment claim. This situation offers an opportunity for litigation efficiency and the conservation of judicial resources. More specifically, the potential application of *res judicata* favors bifurcation in this case. The United States Court of Appeals for the Fourth Circuit has established that when sitting in diversity jurisdiction, a federal district court gives a foreign country judgment the preclusive effects provided under the law of the forum state. *Andes v. Versant Corp.*, 878 F.2d 147, 150 (4th Cir. 1989). In Maryland, foreign country judgments may trigger *res judicata, see Telnikoff v. Matusevitch*, 347 Md. 561, 616, 702 A.2d 230, 257 (1997), and Maryland's rules of preclusion – rather than the foreign country's rules – govern the analysis, *Andes,* 878 F.2d at 150. In Maryland, *res judicata*, or claim preclusion, bars the relitigation of a claim when:

(1) the parties in the present litigation are the same or in privity with the parties to the earlier litigation;
(2) the claim presented in the current action is identical to that determined or that which could have been raised and determined in the prior litigation; and
(3) there was a final judgment on the merits in the prior litigation.

*U.K. Const. & Mgmt., LLC v. Gore*, 199 Md. App. 81, 89, 20 A.3d 163, 168 (2011) (internal citations and quotations removed). Default judgments may satisfy the elements of *res judicata. Kim v. Council of Unit Owners for Collington Ctr. III Condo.*, 180 Md. App. 606, 624, 952 A.2d 346, 356 (2008).

Plaintiff concedes that it would be premature for this Court to rule on the application of *res judicata* to the counterclaims. (ECF No. 14 at 5 (stating that the UK judgment only becomes "a final judgment on the merits" for the purposes of *res judicata* "if Bluebell prevails on its recognition claim")). This Court notes, without deciding, that Defendant's

counterclaims, which relate to the same contract at issue in the U.K. Action, appear to be claims which "could have been raised and determined in the prior litigation." *U.K. Const. & Mgmt.*, 199 Md. App. at 89, 20 A.3d at 168. Defendant has not argued that his counterclaims could not have been raised in the U.K. Action, assuming of course the U.K. court had personal jurisdiction over the Defendant. (*See* ECF No. 18.)

The possibility that *res judicata* will bar Defendant's counterclaims demonstrates that bifurcation will promote efficiency and judicial economy. Rather than "prejudice[] the Defendant's ability to achieve disposition" (ECF No. 18 at 3), the bifurcation of Defendant's counterclaims offers the quickest pathway to resolving *all* claims in this case – including Plaintiff's own alternative breach of contract claim. Accordingly, pursuant to Rule 42(b) of the Federal Rules of Civil Procedure, Plaintiff's Motion to Bifurcate Complaint from Counterclaim (ECF No. 14) is GRANTED. Even though Plaintiff moved to bifurcate the Defendant's counterclaims before seeking leave to add its own alternative breach of contract claim, the justifications for bifurcating the Defendant's counterclaims apply with equal force to Plaintiff's now-added breach of contract claim, which seeks to enforce the same contract at issue in Defendant's counterclaims. This Court will therefore bifurcate Plaintiff's alternative breach of contract claim in addition to bifurcating the Defendant's counterclaims as initially requested in Plaintiff's motion.[11] To be clear, this Court will first resolve Plaintiff's Count I (Recognition of Judgment) and Count II (Enforcement of Foreign Judgment). (ECF No. 21-1 at 3-4.) Only after those claims are resolved will litigation continue as to Plaintiff's

---

[11] Rule 42 does not require a party to file a motion; the Court may bifurcate claims *sua sponte*. Fed. R. Civ. P. 42.

alternative Count III (Breach of Contract) and Defendant's counterclaims. (ECF No. 21-1 at 5; ECF No. 9.)

## IV.   Joinder

This Court now turns to the Defendant's Motions for Joinder (ECF Nos. 31, 32). As an initial matter, the motions themselves appear to be identical, with the later filed motion (ECF No. 32) having additional exhibits attached.[12] In both motions and under "Rule 19 or 20," Defendant seeks to join (1) N198GS Inc., Trust, the alleged "registered owner" of the aircraft; (2) Justin Jenkins, CEO of Jet Evolutions, LLC; (3) Susan Kopacz, President and Registered Agent for Jet Evolutions, LLC; (4) Jet Evolutions, LLC; and (5) Johan Eliasch, principal officer of the Plaintiff Bluebell (ECF No. 32.)[13] Plaintiff  argues first that Defendant's request for joinder is untimely. As to the substance of the motion, Plaintiff argues that factual knowledge related to this case is an insufficient reason for joinder as a party.

Regarding timeliness, Bluebell argues that the motions, filed on June 19, 2018 (ECF No. 31) and June 20, 2018 (ECF No. 32), were filed over five months after the Court's January 2, 2018 deadline for moving for joinder (ECF No. 10). According to the Plaintiff, the Defendant has not shown "good cause" for having missed this deadline. The *pro se* Defendant, however, included in prior filings "requests" for joinder of three of the proposed parties. Specifically, on December 13, 2015, Defendant requested "joinder of the U.S.

---

[12] As the more comprehensive and more recently filed motion, this Court will cite to ECF No. 32.

[13] Defendant has cited *K & S Real Properties, Inc. v. Olhausen Billiard Manufacturing, Inc.,* Civ. Action No. ELH-15-1199, 2016 WL 3162799 (D. Md. June 7, 2016) for the proposition that "[j]oinder is appropriate where counterclaims raise the issues of fraud and fraudulent inducement." (ECF No. 32 at 2.) Judge Ellen L. Hollander's opinion in *K&S Real Properties,* however, does not *automatically* approve joinder whenever counterclaims of fraud are raised; joinder must comply with the requirement of Rules 19 and 20. *K & S Real Properties,* 2016 WL 3162799, at *5.

registered owner of the aircraft N198GS." (Def.'s Resp. Mot. Bifurcate, ECF No. 18 at 2.) On December 27, 2017, Defendant requested joinder of N198GS Inc., Trust; Justin Jenkins; and Jet Evolutions, LLC. (Def.'s Am. Answer, ECF No. 20 at 2.) Given Defendant's *pro se* status, the Court will credit these "requests" for joinder as timely motions for joinder. *See Erickson*, 551 U.S. at 94. Defendant did not request joinder of Susan Kopacz or Johan Eliasch until he filed the pending Motions for Joinder in June 2018 (ECF Nos. 31, 32), and Defendant has not even attempted to offer "good cause" for his failure to abide by the Court's deadline for joinder motions. (ECF No. 10.) Defendant's Motions for Joinder (ECF Nos. 31, 32) are therefore DENIED IN PART as to Susan Kopacz and Johan Eliasch.

### A. N198GS Inc., Trust

Turning to the merits of the three timely requests, Defendant asserts that during the relevant time period, N198GS Inc., Trust (the "Trust") has been the FAA-registered owner of the aircraft. (ECF No. 32 at 3.) Defendant contends that the N198GS Inc., Trust entered an agreement with Plaintiff that required the Plaintiff to get the Trust's written consent before assigning any interest in the aircraft to a third party. (*Id.* (citing ECF No. 20-1 at 91, ¶¶ 17-18).) Defendant has also noted that the Trust has been joined as a party in a purportedly related case in the Superior Court of Justice, Ontario, Canada, *Bluebell Business Ltd. v. New United Goderich, Inc.*, File No. 16-58336SR ("Canadian Action"). (ECF No. 20 at 2.)[14] Defendant therefore argues that under Rule 19(a)(1)(B)(i) the N198GS Inc., Trust is "vulnerable to incurring double, multiple, or otherwise inconsistent obligations." (*Id.*)[15]

---

[14] The Defendant requests that the Court "take judicial notice of all submissions filed or presented in *Bluebell Business Ltd., v. New United Goderich, Inc.,* Court File No. 16-58336SR, [i]n the Ontario Superior Court of Justice, as that case is substantially based on the facts and circumstances presented in this matter." (ECF No. 9 at 7.) The Defendant, however,

Defendant has ignored the first part of Rule 19(a)(1)(B), which requires the person to "*claim*[] an interest relating to the subject of the action." Fed. R. Civ. P. 19(a)(1)(B) (emphasis added). While the Trust may *possess* an interest in the aircraft that was subject to the lease agreement between Plaintiff and Defendant (and have some interest in protecting the factual record as to its consent to the sublease), there has been no indication of the Trust itself *claiming* an interest in these proceedings. *See Home Buyers Warranty Corp. v. Hanna*, 750 F.3d 427, 434 (4th Cir. 2014) (relying on the fact that the party to be joined was "actively contesting their liability in state court"); *Equal Employment Opportunity Comm'n v. Blockbuster, Inc.*, No. RWT 07-2612, 2008 WL 11366452, at *2 (D. Md. Nov. 10, 2008) (refusing joinder where defendant "made no showing that either [non-party] claims any interest in the action").[16] Even if this Court were to move on to consider Rule 19(a)(1)(B)(i), "a person does not become a necessary party to an action simply because the determination of the action will affect that person's rights under a separate or subsequent contract." *Riesett v. Mayor & City Council of Baltimore*, No. GLR-13-1860, 2013 WL 5276553, at *4 (D. Md. Sept. 18, 2013) (quoting *Redner's Mkts., Inc. v. Joppatowne G.P. Ltd. P'ship,* 918 F. Supp. 2d 428, 436 (D. Md. 2013)). Defendant also misconstrues Rule 19(A)(1)(B)(ii), which analyzes the

---

has not provided a single such document to this Court, and this Court will not blindly take judicial notice of "all submissions filed or presented" in a foreign court.

[15] Defendant has also cited *Buckner v. Jones*, 157 Md. 239, 145 A. 550, 553 (1929) to support joinder in this case, but Maryland law does not govern joinder, which is a primarily *procedural* issue governed by federal law, *Provident Tradesmens Bank & Tr. Co. v. Patterson*, 390 U.S. 102, 125 n.22 (1968). Furthermore, the *Buckner* case is distinguishable as the parties here do not request specific performance, which might implicate how the aircraft (allegedly owned by the Trust) would be used. *See Buckner,* 157 Md. 239, 145 A. at 553.

[16] *See also Federal Insurance Company v. Singing River Health System*, 850 F.3d 187, 201, 97 Fed. R. Serv. 3d 79 (5th Cir. 2017); *School Dist. of City of Pontiac v. Secretary of U.S. Dept. of Educ.*, 584 F.3d 253, 266, 249 Ed. Law Rep. 654, 74 Fed. R. Serv. 3d 1295 (6th Cir. 2009), cert. denied, 130 S. Ct. 3385, 177 L. Ed. 2d 302 (2010); *Bayer Cropscience AG v. Dow Agrosciences LLC*, 288 F.R.D. 84, 88, 84 Fed. R. Serv. 3d 33 (D. Del. 2012) ("An absent party's decision to forego intervention may indicate that the party does not deem its own interests substantially threatened by the litigation."); *In re Chinese Manufactured Drywall Products Liability Litigation*, 273 F.R.D. 380, 386 n.8 (E.D. La. 2011); *Powers v. City of Seattle*, 242 F.R.D. 566, 568 (W.D. Wash. 2007); *Rotec Industries, Inc. v. Aecon Group, Inc.*, 436 F. Supp. 2d 931, 938 (N.D. Ill. 2006); *Blumberg v. Gates*, 204 F.R.D. 453, 456 (C.D. Cal. 2001).

obligations of *existing* parties. Fed. R. Civ. P. 19(A)(1)(B)(ii). Defendant has failed to show that either of the existing parties would be at risk of incurring duplicative obligations by litigating this case in the absence of the Trust.

Though not cited by the *pro se* Defendant, Rule 19(a)(1)(A) also does not support Defendant's request to join the Trust. Defendant's submissions fail to explain how this Court would be unable to "accord complete relief among the existing parties" in the Trust's absence. Fed. R. Civ. P. 19(a)(1)(A). That is not to say the Trust will not be subjected to discovery requests, but the Trust need not be joined as a party to resolve the existing parties' requests for contract damages. The N198GS Inc., Trust is therefore not a necessary party under Rule 19.

Permissive joinder of the N198GS Inc., Trust under Rule 20 is also not warranted. Defendant has failed to show that the Trust asserts any right to relief against the Defendant, Fed. R. Civ. P 20(a)(1)(A), and the Defendant has failed to assert any right to relief against the Trust, Fed. R. Civ. P. 20(a)(2)(A).

### B.  Justin Jenkins and Jet Evolutions, LLC

Defendant argues that joinder of Justin Jenkins and Jet Evolutions, LLC ("Jet Evolutions") is warranted under either Rule 19 or Rule 20. (ECF No. 32 at 3.) Jenkins is the CEO of Jet Evolutions, which served as "the advertised broker and leasing representative for the . . . aircraft." (ECF No. 39 at 4.) The parties do not dispute that 15199 Omega Ct., Waterford, VA 20197 is Mr. Jenkins's residence as well as Jet Evolution's registered address. (*See* ECF No. 32 at 4; ECF No. 32-5.) According to the Defendant, "Jenkins accepted funds from the Defendant to be forwarded to [Bluebell] . . . . The funds . . .  are at issue in this

case." (*Id.* at 4.) In his Answer, Defendant states that at one point he enlisted the help of "county law enforcement investigators due to . . . the belief by the Defendant that the monies already paid may have been stolen."[17] (ECF No. 20 at ¶ 37.) He further alleges that Jenkins and Jet Evolutions "assisted the Plaintiff in the fraudulent representations and inducement of the Defendant to enter into the contracts giving rise to this case." (*Id.* at 6.) Defendant also asserts that Jet Evolutions has been joined in the Canadian Action along with N198GS Inc., Trust. (ECF No. 32 at 4.) Plaintiff's opposition to joinder of Mr. Jenkins and Jet Evolutions merely contains conclusory statements that Defendant fails to satisfy Rules 19 or 20. (ECF No. 38 at 6.)

Regarding required joinder under Rule 19(a)(1)(A), Plaintiff and Defendant both seek monetary damages regarding a contract to which Mr. Jenkins and Jet Evolutions were not parties, and the absence of Mr. Jenkins and Jet Evolutions would not impede the Court's ability to award "meaningful relief" on the existing parties' claims. *See Robertson v. Jackson*, 972 F.2d 529, 536 (4th Cir. 1992), *as amended* (Aug. 12, 1992). Under Rule 19(a)(1)(B), there is no indication of Mr. Jenkins or Jet Evolutions *claiming* an interest related to this action, so this Court need not analyze any risk to such an interest or any risk of double or inconsistent obligations to the existing parties. *See Home Buyers Warranty Corp. v. Hanna*, 750 F.3d at 434; *Blockbuster,* 2008 WL 11366452, at *2.

Permissive joinder under Rule 20(a)(2), however, may be available. Defendant asserts that Mr. Jenkins and Jet Evolutions "assisted the Plaintiff in the fraudulent representations and inducement of the Defendant to enter into the contracts giving rise to this case." (ECF

---

[17] Defendant's earlier belief that a potential theft occurred is not affirmatively asserted as a counterclaim (see ECF Nos. 9, 20) nor is it mentioned in Defendant's Motions for Joinder (ECF Nos. 31-32). There is no indication that Defendant intends to serve Mr. Jenkins or Jet Evolutions with a third-party complaint under Rule 14.

No. 39 at 6.) Notwithstanding the Plaintiff's conclusory analysis to the contrary, Defendant asserts a right to relief against Bluebell, Mr. Jenkins, and Jet Evolutions "jointly, severally, or in the alternative with respect to or arising out of the same transaction" such that a "question of law or fact common to [Bluebell, Mr. Jenkins, and Jet Evolutions] will arise in the action." Fed. R. Civ. P 20(a)(2). At this stage, however, the Court cannot conclusively determine that joinder under Rule 20 would be proper as the parties have not briefed whether this Court has personal jurisdiction over Mr. Jenkins or Jet Evolutions. *Block Indus. v. DHJ Indus., Inc.,* 495 F.2d 256, 259 (8th Cir. 1974); Wright, Miller, et al., *Rule 20. Permissive Joinder of Parties: Subject-Matter Jurisdiction and Venue,* 7 Fed. Prac. & Proc. Civ. § 1659 (3d ed.).[18] Given the Defendant's *pro se* status, this Court will require further briefing on this issue. Accordingly, Defendant's Motions for Joinder (ECF Nos. 31, 32) are DENIED WITHOUT PREJUDICE as to Mr. Jenkins and Jet Evolutions to enable the parties to provide further briefing on whether this Court has personal jurisdiction over one or both of them.

### C. Corporate Disclosure Statement

As mentioned earlier, Defendant has taken issue with Plaintiff's Corporate Disclosure Statement under Local Rule 103.3. (ECF No. 20 at ¶¶ 4-6; ECF No. 23 at 3; ECF No. 25-1 at 8.) While this argument does not support Defendant's opposition to the Plaintiff's Amended Complaint, it raises a question as to whether Plaintiff has concealed its business relationships in an effort to prevent the proper joinder of parties. Local Rule 103.3 requires counsel to file a statement containing:

---

[18] Both Mr. Jenkins and Jet Evolutions are Virginia residents, so joinder would not deprive this Court of diversity subject-matter jurisdiction.

a) **Corporate Affiliation**: The identity of any parent or other affiliate of a corporate party and the description of the relationship between the party and such affiliates. The identity of all members of any party that is a business entity established under state law, other than a corporation; and in cases based on diversity jurisdiction, the state of citizenship of each member.

b) **Financial Interests in the Outcome of the Litigation**: The identity of any corporation, unincorporated association, partnership, or other business entity, not a party to the case, which may have any financial interest whatsoever in the outcome of the litigation, and the nature of its financial interest. The term "financial interest in the outcome of the litigation" includes a potential obligation of an insurance company or other person to represent or to indemnify any party to the case. Any notice given to the Clerk under this Rule shall not be considered as an admission by the insurance company or other person that it does in fact have an obligation to defend the litigation or to indemnify a party or as a waiver of any rights that it might have in connection with the subject matter of the litigation.

L.R. 103.3 (D. Md. 2016).

Plaintiff's Corporate Disclosure Statement states, "The Plaintiff has no parent corporation, nor is there any publicly held corporation that own[s] 10% or more of the stock in the Plaintiff." (ECF No. 3.) It is silent as to other entities with financial interests in this litigation. Defendant specifically objects to Plaintiff's non-disclosure of its affiliations with Santiago Business Co. International Ltd. ("Santiago International"); N198GS, Inc.; and Firefly Financial Limited ("Firefly"). (ECF No. 20 at ¶¶ 4-6.) In response, Plaintiff argues that Bluebell is neither a "corporation" nor a "business entity established under state law" because it is an "Isle of Man limited company." (ECF No. 24 at 6.) Bluebell also contends that Santiago International is not a "corporation." (*Id.*)

Bluebell misconstrues the scope of Local Rule 103.3 and makes no attempt to comply with the "financial interest" disclosure requirement. The term "corporate party" is intended to cover all parties that are not natural persons. Even if a limited company registered in the

Isle of Man is not "a business entity establish under state law," it is certainly a "corporate party" that must disclose "the identity of any parent or other affiliate." Unlike Federal Rule 7.1, Local Rule 103.3 makes no exception for privately held companies or corporations with less than 10% ownership interest.[19] Additionally, the obligation to disclose "the identity of any corporation, unincorporated association, partnership, or other business entity" with a "financial interest whatsoever in the outcome of the litigation" is borne by all parties without exception, and "other business entities" captures all business forms without limitation to those "established under state law." LR. 103.3. Accordingly, Plaintiff will have 14 days to update its Corporate Disclosure Statement in accordance with this guidance.

## CONCLUSION

For the reasons set forth above, Defendant's Motion to Dismiss (ECF No. 25) is DENIED; Plaintiff's Motion to Amend/Correct Complaint (ECF No. 21) is GRANTED; Plaintiff's Motion to Bifurcate Counterclaims (ECF No. 14) is GRANTED; and Plaintiff's own breach of contract claim (Count III in Plaintiff's Amended Complaint) will also be bifurcated. In addition, Defendant's Motions for Joinder of Parties (ECF Nos. 31-32) are DENIED WITH PREJUDICE IN PART and DENIED WITHOUT PREJUDICE IN PART. Specifically, the Motions for Joinder (ECF Nos. 31, 32) are DENIED WITH PREJUDICE as to Susan Kopacz, Johan Eliasch, and the N198GS Inc., Trust. The Motions for Joinder (ECF Nos. 31, 32) are DENIED WITHOUT PREJUDICE as to Justin Jenkins and Jet Evolutions, LLC. The Parties shall jointly submit a proposed briefing schedule on a

---

[19] This Court also notes that Local Rule 103.3 facilitates compliance with the "financial interest" standard of Canon 3C(1)(c) of the Code of Conduct for United States Judges. *See* Fed. R. Civ. P. 7.1, Advisory Committee Notes. However Bluebell chooses to characterize its corporate status, a disclosure of affiliations and financial interest is still necessary to enable this Court to determine any conflicts of interest.

renewed Motion for Joinder to address personal jurisdiction as to Justin Jenkins and Jet Evolutions, LCC. Finally, Plaintiff has 14 days to update its Corporate Disclosure Statement in accordance with this Memorandum Opinion.

A separate Order follows.


Date: August 7, 2018                          _____/s/_____
                                              Richard D. Bennett
                                              United States District Judge